IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| C&M OILFIELD RENTALS, LLC<br>D/B/A C-MOR ENERGY SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>APOLLO LIGHTING SOLUTIONS INC.<br>and<br>CLEANTEK INDUSTRIES, INC.<br><br>Defendant. | § § § § § § § § § § § § § § § | Civil Action No. 6:20-cv-1113<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF C&M OILFIELD RENTALS, LLC'S COMPLAINT**

Plaintiff C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services ("C&M"), by and through its undersigned attorneys, files this Complaint and Request for Preliminary and Permanent Injunction against Apollo Lighting Solutions Inc. ("Apollo") and CleanTek Industries, Inc. ("CLEANTEK") (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1. This action seeks legal and equitable relief based on Apollo's false patent marking of its lighting systems that may be used on drilling rigs.

**PARTIES**

2. C&M is a Wyoming limited liability company with its principal place of business located at 519 Circle Dr., Cody, WY 82414.

3. On information and belief, Apollo Lighting Solutions Inc. is a Delaware corporation with a principal place of business at 7903 W. Industrial Avenue, Midland, TX, USA 79706.

1

4. On information and belief, CLEANTEK Industries Inc. is a Canadian company with a location in the United States at 7903 W. Industrial Avenue, Midland, TX, USA 79706.

5. On information and belief, the registered agent for Apollo Lighting Solutions Inc. is Registered Agent Solutions, Inc., located at 9 E. Loockerman Street, Suite 311, Dover, DE 19901.

6. On information and belief, the registered agent for CLEANTEK Industries, Inc. is Registered Agent Solutions, Inc., located at 9 E. Loockerman Street, Suite 311, Dover, DE 19901.

## JURISDICTION AND VENUE

7. This is a civil action that arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. § 292. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

8. This is also an action for unfair competition, including false and misleading description or advertising, under the Lanham Act, 15 U.S.C. § 1125, and under 28 U.S.C. §§ 1331 and 1338. This Court also has subject matter jurisdiction pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.

9. On information and belief, the Court has general and specific personal jurisdiction over CLEANTEK because CLEANTEK is a resident of the State of Texas and has a place of business in the State of Texas and in this judicial district, and continuously and systematically conducts business in the State of Texas and in this judicial district, and continuously and systematically conducts business in the State of Texas and in this judicial district.

10. The Court has both general and specific personal jurisdiction over Apollo because Apollo is a resident of the State of Texas and has its principal place of business in the State of Texas and in this judicial district, and continuously and systematically conducts business in the

State of Texas and in this judicial district. Exercising personal jurisdiction over each Defendant in this lawsuit comports with due process and traditional notions of fair play and substantial justice.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, in that both Apollo and CLEANTEK reside in this district and are subject to personal jurisdiction in this district.

## FACTS

### C&M's Development of the Crown Jewel

12. C&M markets, leases, and sells oilfield service equipment to customers nationwide.

13. C&M is a market-leading innovator in the development of modular drilling rig lighting systems.

14. Generally, the construction of a well for oil and/or natural gas involves three phases: drilling, completion, and production. The drilling phase must be completed before the other two phases may begin. Well construction is very expensive, in part because the drilling rig and other pieces of equipment are rented by the day. Accordingly, once the operator of a wellsite has begun drilling, it is extremely important to finish that phase of the process as quickly as possible.

15. One consequence of the need to complete drilling as quickly as possible is that operators often choose to drill around the clock, or as close to that schedule as possible. As a result, drilling activity often continues after dark. Because wellsites are almost always in remote locations, there is no readily available source of lighting to keep the wellsite illuminated during nighttime operations.

16. Proper illumination during nighttime operations is exceedingly important. Wellsites are crowded and inherently dangerous work places, with many hazards that can cause injury to workers, and these risks are intensified if a wellsite is not adequately illuminated.

17. Prior to C&M's advances in the field, the lighting options available for wellsite operators were limited. The most common solution had long been portable light towers with halogen bulbs. There were numerous limitations with these towers, including that the towers could not be centrally located within a wellsite. As a result, an operator would be required to use multiple towers spaced around the drilling rig, but this was inefficient and created inconsistent lighting.

18. Other rig-mounted lighting systems suffered from drawbacks including weight, difficulty of installation, safety concerns, limited customization, and lack of portability.

19. In March 2018, C&M began offering customers a new drilling rig lighting system under the name "Crown Jewel."

20. Unlike the large, frame-based design of prior rig-mounted lighting systems, the Crown Jewel uses multiple small lightweight lights that attach via mounting poles and/or brackets directly to the handrail of the rig's crown deck. The light fixture is mounted such that it may be placed in one of at least two discrete positions, a feature that allows the system to be left in place when a rig is moved.

21. C&M has two issued U.S. patents, three pending U.S. patent applications, and multiple foreign and international applications related to its novel design for a drilling rig lighting system.

22. C&M has devoted substantial time, effort, and resources to the development and promotion of its Crown Jewel product and related patents. As a result, the Crown Jewel system has achieved commercial success and wide adoption through the industry.

## Apollo's HALO Lighting System

23. Apollo is a company that offers and sells the HALO Crown-Mounted Lighting system for installation and operation at oil drilling rigs at well sites.

24. On information and belief, Apollo began offering for sale an original design of the HALO crown-mounted lighting system as early as 2013.

25. The original design of the HALO crown-mounted lighting system included a frame that supported a number of lights mounted at the crown of a drilling rig. The frame surrounded the crown deck and handrails around all sides and required multiple attachment points to the crown. For example, the image below appears from one of Apollo's issued patents and depicts a large frame that supports many lights and that is connected to a crown of a drilling rig.



(U.S. Patent No. D757,343.)

26. Apollo filed multiple patent applications on the original design of its frame-based lighting system, and received at least four issued U.S. patents on that design, including U.S. Patent

Nos. 9,316,390 ("the '390 Patent"); 10,125,935 ("the '935 Patent"); 10,145,544 ("the '544 Patent"); and D757,343 ("the '343 Patent") (collectively, "the Apollo Patents").

27. Each of the Apollo Patents is limited to claims that cover a frame-based lighting system.

28. Each of the claims of the '390 Patent requires a "lighting frame attachable to the crown of the drilling rig, the lighting frame including an adjustable frame portion attachable to the crown of the drilling rig by support posts for rigidly fixing said adjustable frame portion to the crown, and a light bearing frame portion including support braces and cross braces, supported by and attached to said adjustable frame portion." Each of the claims further requires that the each "light bearing frame portion" includes "an outer structural frame consisting of a plurality of connected beams forming a perimeter around which said lighting fixtures are attached," among other claim elements.

29. Each of the claims of the '935 Patent requires a frame. For example, claim 1 requires "a horizontally oriented multi-sided frame of the drilling rig lighting system being configured to support a plurality of light fixtures," such that the multi-sided frame "defin[es] an area that when viewed from above the crown is greater than an area defined by the crown" and requires "at least two horizontal first frame members arranged parallel to one another and forming two opposite sides of the multi-sided frame."

30. Similarly, claims 8 and 11 of the '935 Patent require "a horizontally arranged supporting frame of the drilling rig lighting system" that "defin[es] an area that when viewed from above the crown is greater than an area defined by the crown" and that requires at least two "horizontal first frame members" arranged parallel or perpendicular to one another and forming two opposite sides or four total sides of the supporting frame.

31. Each of the claims of the '544 Patent requires a frame. For example, claim 1 requires "a horizontally oriented multi-sided frame of the drilling rig lighting system being configured to support the plurality of light fixtures," such that the multi-sided frame comprises "two horizontal first frame members arranged parallel to one another and forming two opposite sides of the multi-sided frame."

32. Similarly, claims 10 and 13 of the '544 Patent require "a horizontally arranged supporting frame of the drilling rig lighting system [] being configured to support the plurality lighting fixtures" such that the supporting frame requires at least two "horizontal first frame members" arranged parallel or perpendicular to one another and forming two opposite sides or four total sides of the supporting frame.

33. The '343 Patent also shows a frame-based design, as seen in the image reproduced above.

34. On information and belief, Apollo's frame-based design of the HALO was not widely adopted or commercially successful in the drilling industry due to several drawbacks related to the frame-based design.

35. The frame-based lighting system was large and heavy, and required removal and reinstallation when a drilling rig needed to be moved to another wellsite. The removal and reinstallation of the lighting system required the use of a crane because of the weight and size of the lighting system.

36. On information and belief, Apollo introduced the current design of the HALO crown-mounted lighting system around June 2018, after C&M's Crown Jewel lighting system, which utilizes a modular lighting system design, had been introduced and began achieving commercial success in the drilling industry.

37. On information and belief, Apollo was acquired by CLEANTEK in or around the middle of 2018.

38. The current design of the HALO crown-mounted lighting system is not a frame-based lighting system design, as there is not a single frame that connects the light fixture mounts of the lighting system.

39. On information and belief, the current design of the HALO crown-mounted lighting system, as shown in the below photo, utilizes individual mounting poles attached to the crown deck of a drilling rig, and each mounting pole supports one or more light fixtures. The mounting poles do not attach to each other in a frame.



40. On information and belief, Defendants no longer actively offer to sell or lease the original frame-based design of the HALO crown-mounted lighting system.

41. Defendants do not have any issued patents that cover their current design of the HALO crown-mounted lighting system.

42. Defendants have installed and sold or leased the mounting pole-based design of the HALO crown-mounted lighting system to drilling rig providers or operators, such as Axis Energy Services, LLC.

**Misrepresentations in Apollo's and CLEANTEK's Advertising**

43. CLEANTEK's website states that the HALO crown-mounted lighting system is a "patented … technology that provides a new alternative to lease lighting."  Available at https://www.cleantekinc.com/halo-crown-mounted-lighting (last visited November 24, 2020).

44. CLEANTEK's website further represents that the "new lightweight" version of the HALO system with "new mounting technology that allows for simple rig in and out without the need for a crane" is covered by "Patent Numbers: US D757,343 and US 9,316,390; Canadian 2,928,251." *Id.*

45. Defendants describe the current HALO crown-mounted lighting system in a brochure as a "combination of patented and patent-pending technology that provides a new alternative to lease lighting.  []  This new lightweight system incorporates the brightest LED lights on the market made in house, with new mounting technology that allows for simple rig in and out without the need for a crane."  Available at https://e6559250-e6e0-471b-8f83-66e555623335.filesusr.com/ugd/e08fea_a3fd0c25ebe24bfe87154c0504e8be44.pdf.  The brochure further states that the HALO crown-mounted lighting system is covered by "Patent Numbers: US D757,343 and US 9,316,390; Canadian 2,928,251." *Id.*

46. On information and belief, Defendants actively market the current design of the HALO crown-mounted lighting system to prospective and actual customers, such as Axis Energy Services, LLC, by representing that it is protected by issued U.S. patents.

47. Two of Apollo's senior executives, Matthew Gowanlock and Darcy Dupuis, are named inventors on each of the Apollo Patents.  Accordingly, Defendants have at all times been

aware that none of the Apollo Patents include claims that cover the current version of the HALO lighting system.

48.     Moreover, C&M expressly notified Defendants in June 2018 that their statements to customers and potential customers falsely identified that C&M's modular, mounting pole-based Crown Jewel lighting system as being covered by Apollo's patents and that Apollo had filed a patent infringement suit against C&M.

49.     On June 20, 2018, counsel for C&M sent a letter to Apollo noting that Apollo improperly made such statements.  A true and correct copy of the June 20, 2018 letter is attached hereto as Exhibit 1.

50.     In its June 20, 2018 letter to Defendants, C&M identified that, for example, the '390 Patent claimed "an adjustable frame portion attachable to the crown of the drilling rig" and a "light bearing frame portion" that includes, among other things, "support braces," "cross braces," and an "outer structural frame."

51.     C&M further identified that none of these required claim elements was present in the design of C&M's Crown Jewel that was being marketed and offered for sale or lease at that time.

52.     On April 30, 2019, counsel for C&M sent a second letter to Defendants, this time noting that Defendants were improperly advertising the current HALO lighting system, which was a modular, frame-based lighting system design unlike the early HALO design, as being covered by issued patents.  A true and correct copy of the April 30, 2019 letter is attached hereto as Exhibit 2.

53. In its April 30, 2019 letter to Defendants, C&M further identified that it was a "violation of federal patent laws – 35 USC § 292 – to falsely represent that a product is protected by a US patent."

54. On October 26, 2020 counsel for C&M sent a third letter to Defendants that yet again put Defendants on notice that they were improperly advertising the HALO lighting system as being covered by issued patents. A true and correct copy of the October 26, 2020 letter is attached hereto as Exhibit 3.

55. Defendants have known for years that they were misrepresenting that the current mounting pole-based design of the HALO lighting system was covered by patents. Defendants have nevertheless continued to repeat such representations even after C&M repeatedly demanded that Defendants cease this behavior.

56. C&M has suffered a competitive injury as a result of Defendants' false marking and false representations of its HALO product as patented.

## CAUSES OF ACTION

### Count 1:  False Patent Marking under 35 U.S.C. § 292

57. C&M incorporates by reference and realleges Paragraphs 1-56 of its Complaint, as though fully set forth herein.

58. Defendants have marked the current version of the HALO lighting system as being covered by at least US D757,343 and US 9,316,390.

59. Defendants have falsely marketed and advertised the current version of their HALO lighting system as a patented rig lighting system, even though Defendants have no issued patent that covers this product.

60. Defendants continue to falsely mark the current version of the HALO lighting system as being covered by patents despite knowing since at least as early as June 2018 that the HALO lighting system was not covered by the Apollo Patents.

61. Such conduct violates 35 U.S.C. § 292 because Defendants are falsely marking the HALO lighting system as a patented product with the purpose and intent of deceiving the public, and inducing them to believe that Defendants hold patents on the current design of the HALO lighting system.

62. C&M has suffered a competitive injury as a result of Defendants' false marking of their products as patented and seeks recovery of damages adequate to compensate C&M for its injury.

**Count 2: Lanham Act—False, Deceptive, and Misleading Representations of Fact**

63. C&M incorporates by reference and realleges Paragraphs 1–62 of its Complaint, as though fully set forth herein.

64. Defendants' acts violate Section 43(a) of the Lanham Act, including 15 U.S.C. § 1125(a)(1)(A) and 15 U.S.C. § 1125(a)(1)(B).

65. Defendants have engaged in unfair competition by, among other things, making false representations that the current version of their HALO crown-mounted lighting system is covered by issued US patents.

66. Such misrepresentations were made by Defendants for the purpose of promoting Defendants' competing HALO lighting system.

67. The statements described above (and others) constitute false or misleading statements regarding affiliation or connection, descriptions, characteristics, or impressions of Defendants' HALO crown-mounted lighting system.

68. Defendants' statements are misleading to actual and potential customers of C&M's Crown Jewel system, and such statements deceived, confused, or misled, or had the capacity to deceive, confuse, or mislead consumers.

69. On information and belief, Defendants' statements are material and likely to influence a customer's purchasing decision for rig-mounted lighting systems.

70. Defendants' statements have proximately caused and/or are likely to cause injury to C&M by, among other things, diverting sales, licenses, or other economic opportunities from C&M to Defendants or by stalling sales, licenses, or other economic opportunities.

71. As a result of these false or misleading statements in the marketplace, C&M has suffered and will continue to suffer irreparable and monetary harm in an amount to be determined at trial. C&M will suffer direct monetary damages from the loss of licensing opportunities, licensing fees, and/or sales to customers who select Defendants' products and services instead of C&M's Crown Jewel. Additionally, as a result of the nature of Defendants' activities, C&M is entitled to a trebling of its actual damages and is entitled to recover its attorneys' fees and costs incurred in prosecuting this action.

72. On information and belief, Defendants' acts of unfair competition, including false designation of origin and false and misleading advertising, or knowingly inducing or causing false advertising as described herein, or materially participating in such false advertising, will continue unless enjoined by the Court.

## JURY DEMAND

73. Pursuant to Federal Rule of Civil Procedure 38(b), C&M requests a trial by jury on all issues.

**PRAYER**

74. For these reasons, C&M asks for a judgment against Defendants that includes the following relief:

(A) A determination that Defendants falsely marked the HALO crown-mounted lighting system as a patented product, and awarding C&M the maximum amount of damages allowed under 35 U.S.C. § 292 and any applicable case law;

(B) A permanent injunction enjoining Defendants, their owners, affiliates, officers, directors, managers, agents, servants, employees, trainees, and all persons in active concert or participation with it, from continuing to make misleading and false representations regarding its products, including but not limited to under 15 U.S.C. §§ 1116 and 1117;

(C) An award of damages adequate to compensate C&M for Defendants' misleading and false representations under 15 U.S.C. §§ 1111, 1114, and 1117(a), including but not limited to disgorgement of any of Defendants' profits, any damages sustained by C&M, C&M's lost profits, C&M's lost royalties, C&M's lost or impaired business opportunities, and enhanced damages as allowed by law;

(D) An award of pre-judgment and post-judgment interest on all damages computed;

(E) An award of court costs and attorneys' fees as allowed by applicable law; and

(F) Such other relief as this Court deems fair, just, and appropriate.

Dated: December 7, 2020

Respectfully submitted,

/s/ *C. Erik Hawes*
C. Erik Hawes
State Bar No. 24042543
*erik.hawes@morganlewis.com*
Cullen G. Pick
State Bar No. 24098260
*cullen.pick @morganlewis.com*
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
T. 713.890.5000
F. 713.890.5001

***Attorneys for Plaintiff C&M Oilfield Rentals, LLC***